UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

| | |
|---|---|
| JORDAN ZACHARY B., <br><br> Plaintiff, <br><br> vs. <br><br> FRANK BISIGNANO, Commissioner of Social Security, <br><br> Defendant. | Case No.  1:24-CV-00464-REP <br><br> **MEMORANDUM DECISION AND ORDER** |

Pending is Petitioner Jordan Zachary B.'s Petition for Review (Dkt. 1) and an accompanying Brief in Support of Petition to Review (Dkt. 16) appealing the Social Security Administration's final decision finding him not disabled and denying his claim for disability insurance benefits.  *See* Pet. for Rev. (Dkt. 1).  This action is brought pursuant to 42 U.S.C. § 405(g).  Having carefully considered the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order.

## ADMINISTRATIVE PROCEEDINGS

This case has a complicated procedural history.  Petitioner applied for supplemental security income ("SSI") on July 17, 2018 when he was nineteen years old, alleging disability as a result of Asperger's/autism, attention-deficit/hyperactivity disorder ("ADHD"), sleeping issues, depression, and a knee injury.  AR 13, 62-63.  The claim was denied at every level and Petitioner appealed to federal court.  *See Jordan Zachary B. v. Kijakazi*, Case No. 1:22-CV-00304-DKG (D. Idaho).  On August 2, 2023, the Honorable Debora K. Grasham issued a decision finding that

**MEMORANDUM DECISION AND ORDER - 1**

the ALJ did not sufficiently explain how she evaluated the opinions of the consulting psychologists. Dkt. 18 in Case No. 22-cv-304. Judge Grasham reversed and remanded the case for a new decision. *Id.*

On remand, the claim was assigned to a new ALJ named Stephen Marchioro. 909-925. On June 13, 2024, ALJ Marchioro held a second disability hearing, at which Petitioner continued to allege disability due to his Asperger's/autism disorder. AR 900. Petitioner also submitted medical records about foot and ankle pain that he started experiencing in the fall of 2021, after the first ALJ's decision had been issued. AR 962, 1460-1461. These records indicated that Petitioner was diagnosed with a foot deformity – bilateral pes planovalgus – in 2022 and that Petitioner had received foot braces and injections to treat the condition. AR 1348-1354. At the second disability hearing, Petitioner testified that his foot pain contributed to his inability to work more than 4.5 hours a day. AR 958-959.

On July 22, 2024, ALJ Marchioro issued a decision rejecting Petitioner's claim for disability benefits. AR 900-925. Petitioner did not appeal this decision to the Appeals Council. After sixty days, consequently, the ALJ's decision became the final decision of the Commissioner of Social Security.

Having exhausted his administrative remedies, Petitioner filed this case. Petitioner raises three points of error. First, Petitioner contends the ALJ erred in determining that he was capable of light work without consulting a medical expert about the impact of Petitioner's foot deformity. Pt.'s Br. at 8-10 (Dkt. 16). Second, Petitioner maintains that the ALJ improperly credited the opinions of the reviewing psychologists over the competing opinions of the consulting psychologist, Richard Sonnenberg, and a licensed clinical social worker, Bradley Forsgren. *Id.*

**MEMORANDUM DECISION AND ORDER - 2**

at 10-16.  Finally, Petitioner argues that the ALJ failed to provide clear and convincing reasons for rejecting his subjective symptom testimony.  *Id.* at 17-20.

## **STANDARD OF REVIEW**

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards.  42 U.S.C. § 405(g); *Trevizo v. Berryhill*, 871 F.3d 664 (9th Cir. 2017).  Findings as to any question of fact, if supported by substantial evidence, are conclusive.  42 U.S.C. § 405(g).  In other words, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence.  *See Treichler v. Comm'r of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014).

"Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012).  The standard requires more than a scintilla but less than a preponderance.  *Trevizo*, 871 F.3d at 674.  It "does not mean a large or considerable amount of evidence."  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the Court is to review the record as a whole to decide whether it contains evidence that would allow a person of a reasonable mind to accept the conclusions of the ALJ.  *Richardson*, 402 U.S. at 401; *see also Ludwig*, 681 F.3d at 1051.  The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities.  *Treichler*, 775 F.3d at 1098.  Where the evidence is susceptible to more than one rational interpretation, the reviewing court must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record.  *Ludwig*, 681 F.3d at 1051.  In such cases, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ.  *Batson v. Comm'r of Social Sec.*, 359 F.3d 1190, 1196 (9th Cir. 2004).

**MEMORANDUM DECISION AND ORDER - 3**

The decision must be based on proper legal standards and will be reversed for legal error. *Zavalin v. Colvin*, 778 F.3d 842, 845 (9th Cir. 2015); *Treichler*, 775 F.3d at 1098. Considerable weight is given to the ALJ's construction of the Social Security Act. *See Vernoff v. Astrue*, 568 F.3d 1102, 1105 (9th Cir. 2009). However, this Court "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

## THE SEQUENTIAL PROCESS

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (20 C.F.R. §§ 404.1520, 416.920) – or continues to be disabled (20 C.F.R. §§ 404.1594, 416.994) – within the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is work activity that is both substantial and gainful. 20 C.F.R. §§ 404.1572, 416.972. "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized. 20 C.F.R. §§ 404.1572(b), 416.972(b). If the claimant is engaged in SGA, disability benefits are denied regardless of his medical condition, age, education, and work experience. 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not engaged in SGA, the analysis proceeds to the second step.

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination

**MEMORANDUM DECISION AND ORDER - 4**

of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an individual's physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is "not severe" if it does not significantly limit the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1522, 416.922. If the claimant does not have a severe medically determinable impairment or combination of impairments, disability benefits are denied. 20 C.F.R. §§ 404.1520(c), 416.920(c).

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairments neither meet nor equal a listed impairment, the claim cannot be resolved at step three and the evaluation proceeds to step four. 20 C.F.R. §§ 404.1520(e), 416.920(e).

In the fourth step of the evaluation process, the ALJ decides whether the claimant's residual functional capacity ("RFC") is sufficient for the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). An individual's RFC is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. 20 C.F.R. §§ 404.1545, 416.945. An individual's past relevant work is work he performed within the last 15 years, or 15 years prior to the date that disability must be established, if the work was substantial gainful activity and lasted long enough for the claimant to learn to do the job. 20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965.

**MEMORANDUM DECISION AND ORDER - 5**

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of his impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Garrison v. Colvin,* 759 F.3d 995, 1011 (9th Cir. 2014). If the claimant can do such other work, he is not disabled; if the claimant cannot do other work and meets the duration requirement, he is disabled.

## THE ALJ'S FINDINGS

The ALJ found that Petitioner suffers from the following severe impairments: autism spectrum disorder, major depressive disorder, ADHD, generalized anxiety disorder, obesity, status post bilateral knee surgery, and right foot/ankle dysfunction. AR 903. The ALJ determined that these impairments affect Petitioner's ability to engage in work-related activities in a variety of manners, including that Petitioner can only occasionally climb ladders, ropes, or scaffolds; can only perform simple routine tasks; and can only occasionally interact with coworker and supervisors. AR 907. While Petitioner has worked in a variety of jobs, none of his employment qualifies as past relevant work. AR 923. Based on the testimony of a vocational expert, the ALJ concluded that Petitioner's limitations would not prevent him from working as an electrode cleaner, produce weigher, garment sorter, or cleaner/housekeeper. AR 924. The ALJ, therefore, found that Petitioner was not disabled. AR 925.

## DISCUSSION

I. Petitioner's Mental Health

From the beginning of the case, Petitioner's primary contention has been that his autism and other mental conditions prevent him from having the focus, concentration, and interpersonal

MEMORANDUM DECISION AND ORDER - 6

skills necessary to work fulltime. In other words, Petitioner's claims that his autism has been disabling since he was a teenager. Because this claim relates to the *entire* period of alleged disability, the Court will address Petitioner's arguments about the ALJ's evaluation of the mental health evidence first.

        *a. The Mental-Health-Related Medical Opinions*

The medical record contains four opinions about Petitioner's mental health. The first of these opinions was written by a licensed clinical social worker named Bradley Forsgren. Mr. Forsgren met Petitioner when Petitioner enrolled in a church-organized job training program that Mr. Forsgren helped operate. AR 547. According to Mr. Forsgren's letter, Petitioner participated in the program from March through July of 2018. *Id.* Based on his interactions with Petitioner, Mr. Forsgren wrote that Petitioner "struggles with attending work shifts as scheduled," is a "sub productive" worker, is easily distracted, has fallen asleep at work, gets "irritated easily and struggle[s] to express his emotions in a professional way," has "severe adverse emotional and behavioral reaction to changes," has not responded well to coaching, does not recognize or correct his mistakes, and has a difficult time accepting feedback. *Id.* Mr. Forsgren concluded that Petitioner was not employable "unless significant changes occur in his work behaviors, and that is not likely to happen as it appears he is already giving his best efforts." *Id.*

The second medical opinion is from a consulting psychologist, Richard Sonnenberg, Ph.D., who examined Petitioner on September 12, 2018. AR 565-569. After speaking with Petitioner and performing some basic testing, Dr. Sonnenberg diagnosed Petitioner with autism spectrum disorder without accompanying intellectual impairment. AR 568. Dr. Sonnenberg assessed Petitioner's mental functioning in a range of areas and concluded that Petitioner "had no

**MEMORANDUM DECISION AND ORDER - 7**

significant difficulties with content or process-oriented knowledge problems," performed at the high average level of functioning on the Rapid Assessment Intelligence test, displayed no difficulty with attention and concentration, and had intact memory, but had "almost no insight into his mental health functioning and difficulties" and demonstrated poor judgment toward future goals and the means to achieve them. AR 567-568. In the conclusion of his report, Dr. Sonnenberg focused on Petitioner's social difficulties, opining that Petitioner "has a good deal of difficulty, interpersonally" and "needs a lot more therapy and social intervention strategies if he expects to make any good difference in his competencies in this regard." AR 568.

On September 24, 2018, a state agency consultant, Mack Stephenson, Ph.D., reviewed the entire medical record, including the opinions of Mr. Forsgren and Dr. Sonnenberg. AR 72-73. Dr. Stephenson concluded that Petitioner's autism moderately limited his mental health functioning across all mental domains, including interacting with others and concentrating, persisting, and maintaining pace. AR 68. Dr. Stephenson determined that these limitations would not prevent Petitioner from performing simple, routine entry level work with less social interaction. AR 73.

Finally, on November 14, 2018, another state agency consultant, Dave Sanford, Ph.D., reviewed the entire medical record a second time. AR 88-90. Based on this review, Dr. Sanford agreed with Dr. Stephenson that Petitioner could perform simple, routine entry level work with less social interaction. AR 89-90.

These opinions presented a genuine conflict, which the ALJ had a duty to resolve. *See Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (it is the ALJ's responsibility to determine credibility and resolve conflicts within the record). The ALJ satisfied this duty by discussing each opinion and explaining why he found the opinions of Drs. Stephenson and

**MEMORANDUM DECISION AND ORDER - 8**

Sanford more persuasive than the opinions of Dr. Sonnenberg or Mr. Forsgren. Petitioner argues that the record did not support this conclusion and that the ALJ should have found Petitioner disabled or ordered an updated mental health evaluation on remand. Pt.'s Br. at 10-16 (Dkt. 16).

      b. *Standard of Review*

For claims filed on or after March 27, 2017, the ALJ evaluates the persuasiveness of each medical opinion based on several factors, including supportability, consistency, relationship with the claimant, and specialization. 20 C.F.R. § 416.920c(a). The ALJ's duty to articulate a rationale for each factor varies. 20 C.F.R. §§ 416.920c(a)-(b).

Supportability and consistency are the most important factors, and the ALJ, therefore, must explain how both factors were considered. *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022); 20 C.F.R. § 416.920c(b)(2). The factor of supportability looks inward at a medical opinion's bases: "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . , the more persuasive the medical opinions . . . will be." 20 C.F.R. § 416.920c(c)(1). The factor of consistency, on the other hand, looks outward, comparing the opinion to the other evidence in the record: "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. § 416.920c (c)(2).

The Court reviews the ALJ's persuasiveness determinations under these regulations using the substantial evidence standard. To be upheld, "an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Woods*, 32 F.4th at 787.

**MEMORANDUM DECISION AND ORDER - 9**

*c. Discussion*

The ALJ provided several, overlapping reasons for crediting the opinions of Drs. Stephenson and Sanford over the more restrictive opinions of Dr. Sonnenberg or Mr. Forsgren. For example, the ALJ found that the opinions of the agency reviewers were well-supported by a discussion of the entire medical record, whereas Dr. Sonnenberg's opinion was "vague" and "speculative," and not supported by his findings of high average intellectual functioning and normal attention, concentration, and memory. AR 918-919. The ALJ also found that Drs. Stephenson and Sanford opinions were more consistent with (i) the longitudinal medical record, which included multiple "normal mental status examinations" showing normal judgment and (ii) Petitioner's own reports about his symptoms and work history, including evidence that Petitioner worked at an Amazon warehouse for at least eleven months and only left the job because it was too physically demanding, not because of any mental impairment. *Id.*

Petitioner does not deny that this analysis focused on the supportability and consistency of the medical opinions as required by 20 C.F.R. § 416.920c(b)(2). Instead, Petitioner raises several challenges to reasonableness of the ALJ's analysis. Pt.'s Br. at 10-16 (Dkt. 16).

Most notably, Petitioner points out that the ALJ discounted the opinions of Dr. Sonnenberg and Mr. Forsgren for being over six years old, while crediting the similarly old opinions of the state agency reviewers. Pt.'s Br. at 11-13 (Dkt. 16). The Court agrees with Petitioner that this portion of the ALJ's decision does not withstand scrutiny. All four medical opinions were issued within a four-month span in 2018. The age of Dr. Sonnenberg and Mr. Forsgren's opinions is not a rational reason to reject these opinions in favor of the opinions of the state agency reviewers.

**MEMORANDUM DECISION AND ORDER - 10**

This error, however, is not an independent basis for remand. When an ALJ provides multiple reasons for discrediting medical opinion evidence, including some that are erroneous, those errors are considered harmless if the ALJ has provided other valid and sufficient reasons for discrediting the evidence. *See Batson v. Comm'r of Social Sec.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (even if the record does not support one of the ALJ's stated reasons for disbelieving a claimant's testimony, the error will be harmless if the ALJ provides other valid reasons for the decision) and *Grammer v. Berryhill*, 706 F. App'x 383, 384 (9th Cir. 2017) (unpublished) (any error in rejecting a doctor's opinion was harmless, where the ALJ provided several other specific and legitimate reasons for rejecting the opinion).

In this case, Petitioner's reported work activities constituted a rational reason for the ALJ to credit the opinions of Drs. Stephenson and Sanford over the opinions of Dr. Sonnenberg and Mr. Forsgren. As the ALJ stressed, after Dr. Sonnenberg and Mr. Forsgren issued their opinions, Petitioner held several part-time jobs, including a job at an Amazon warehouse that required Petitioner to work 9.5-hour shifts two days a week. AR 41, 1284. Petitioner held this job for roughly eleven months. AR 919, 1284. Critically, Petitioner indicated that the only reason he could not perform the Amazon job fulltime or keep doing it longer was because of his knee, foot, and ankle pain, not for any mental health reasons. AR 41-42, 919. This was a sufficient reason for the ALJ to adopt Drs. Stephenson's and Sanford's opinions that Petitioner possessed the intellectual ability, judgment, concentration, and attention to perform simple, routine entry level work tasks. *See Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020) (an ALJ reasonably rejected a reviewing physician's opinion about the claimant's ability to tolerate work stress, concentrate, and maintain pace based on the claimant's history of working part-time at FedEx for just over a year, with shifts lasting six to eight hours).

**MEMORANDUM DECISION AND ORDER - 11**

The ALJ also provided rational grounds for finding Drs. Stephenson's and Sanford's opinions that Petitioner only had moderate limitations in social functioning more persuasive than Dr. Sonnenberg's relatively broad claim that Petitioner "a good deal of difficulty, interpersonally." As the ALJ emphasized, Dr. Sonnenberg's opinions about Petitioner's social functioning are rather vague. AR 919. To the extent that they could be interpreted as endorsing marked or extreme social limitations, the ALJ reasonably rejected them as inconsistent with Petitioner's ability to work as a cashier and get-along with peers and management during his time working at Five Guys. AR 260, 906.[1]

None of the critiques that Petitioner lodges against the ALJ's reading of the medical record compel a different finding. First, Petitioner argues, in passing, that the ALJ should have rejected *all* the medical opinions as stale and ordered a new psychological consult on remand. Pt.'s Br. at 16 (Dkt. 16) (complaining that the ALJ "erred in providing his lay medical opinion" rather than requesting updated mental health opinions). Where there is undisputed evidence that a claimant's condition has significantly deteriorated over time, it can be unreasonable for an ALJ to rely on older opinions. *See Stone v. Heckler*, 761 F.2d 530, 532 (9th Cir. 1985) (holding that the ALJ improperly disregarded the most recent medical reports in favor of older ones, where the

---

[1] While this portion of the ALJ's decision is found in an earlier section of the opinion, it relates directly to the ALJ's assessment of Petitioner's social functioning and of Drs. Stephenson's and Sanford's opinions about that functioning. AR 906 (explaining how the agency opinions and the medical record were in accord that Petitioner had moderate mental health limitations). It is, consequently, important context for the Court to consider when assessing the reasonableness of the ALJ's analysis of the medical opinion evidence. *See Kaufmann v. Kijakazi*, 32 F.4th 843, 851 (9th Cir. 2022) (a district court "clearly erred" when it failed to consider "all the pages of the ALJ's decision"); *see also Lewis v. Apfel*, 236 F.3d 503, 513 (9th Cir. 2001) (while an ALJ is required to discuss and evaluate evidence that supports his conclusions, he is not required to do so under any specific heading); *Ozolins v. Saul*, 849 F. App'x 682, 683 (9th Cir. 2021) (unpublished) ("Although the ALJ's explanation might have been more robust, her lengthy evaluation of the evidence elsewhere 'is an adequate statement of the foundations on which the ultimate factual conclusions are based.'") (citing *Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990)).

**MEMORANDUM DECISION AND ORDER - 12**

record had established that the claimant's condition was "progressively deteriorating" and a report made only six days before the hearing "indicated further deformity of Stone's right foot"). In this case, however, Petitioner points to no evidence or allegations that his autism, a life-long condition, was worsening over time. Moreover, his claim that the ALJ was required to obtain a new mental health opinion before assessing the present impact of Petitioner's autism conflicts with his own position in this appeal. Pt.'s Br. at 20 (Dkt. 16) (arguing that the court should remand for an immediate award of benefits for the entire period of disability because the record regarding his autism has "been fully developed and further administrative proceedings would serve no useful purpose"). Remand is not warranted on this issue.

Second, Petitioner emphasizes that he needed assistance to graduate high school and has been fired from multiple jobs. Pt.'s Br. at 12-14 (Dkt. 16). He also takes issue with the ALJ's reliance on his normal mental status examinations "in the sterile and supportive environment of a medical office during a short visit" to find that he was able to work fulltime. *Id.* at 14-15. A different ALJ may have given these factors more weight. But that is not grounds for reversal. When, as here, an ALJ's interpretation of the record is rational, that decision must be upheld even if the record "may also admit of an interpretation more favorable" to the claimant. *Burch v. Barnhart*, 400 F.3d 676, 680-681 (9th Cir. 2005). For the reasons outlined above, Petitioner's work history during the six years after he filed for disability provided a rational reason, standing alone, for the ALJ to prefer the opinions of the state agency reviewers over the more pessimistic opinions of Dr. Sonnenberg or Mr. Forsgren. The ALJ's evaluation of the medical opinion evidence, consequently, must be affirmed.

**MEMORANDUM DECISION AND ORDER - 13**

  II. <u>Petitioner's Subjective Symptom Testimony</u>

  Petitioner's next challenge on appeal relates to his subjective symptom testimony. According to Petitioner, he can work four and half hours "just fine," but after "five or six" hours on the job, he gets "overwhelmed," panics, starts making mistakes, and slows down. AR 958. Petitioner also claims that his foot pain contributes to his inability to work, because he can only be up on his feet "four to five hours," before his feet really start hurting and his "performance drops significantly." AR 962.

  When evaluating the reliability of such testimony, the ALJ engages in a two-step analysis. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991). Second, if such objective medical evidence exists, and the ALJ has not determined that the claimant is malingering, the ALJ must provide clear and convincing reasons before rejecting the claimant's testimony regarding the severity of the claimant's symptoms. *Id.*

  Generalized findings will not satisfy this standard. The reasons an ALJ provides for rejecting a claimant's symptom testimony "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony . . . ." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (quoting *Bunnell*, 947 F.2d at 345-46). In other words, "the 'clear and convincing' standard requires an ALJ to show his work." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

**MEMORANDUM DECISION AND ORDER - 14**

On appeal, the district court's role is to review, not redo, this work. If the ALJ's rationale for rejecting a petitioner's testimony is "clear enough that it has the power to convince," the Court must affirm whether the Court is personally persuaded by the analysis or not. *Smartt*, 53 F.4th at 499.

Here, the ALJ rejected Petitioner's subjective symptom testimony for a variety of reasons, including his part-time work history and physical activity. AR 917. The Court agrees with Petitioner that some of these reasons – for example, the fact that Petitioner went bowling once in 2019 – add little to the analysis. For the reasons already stated, however, Petitioner's reported work activities constituted a clear and convincing reason, on its own, to reject his testimony. As the ALJ stressed, Petitioner testified that he only had the mental capacity to work 4.5-hour shifts before becoming too flustered to continue. AR 908, 958. But his work history included a job at an Amazon warehouse where Petitioner worked 9.5-hour shifts for approximately eleven months and only left the job because it was too hard on his feet. AR 917. The tension between this history and Petitioner's testimony was a valid reason for the ALJ to conclude that Petitioner underestimated how much he can do at work. It was, accordingly, a valid reason to reject Petitioner's claims about the extent of his limitations. *See Burrell v. Colvin*, 775 F.3d 1133, 1137-38 (9th Cir. 2014) ("Inconsistencies between a claimant's testimony and the claimant's reported activities provide a valid reason for an adverse credibility determination."); *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) ("Even where . . . activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of totally debilitating impairment.") and *Ghanim*, 763 F.3d at 1165 ("Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination.").

**MEMORANDUM DECISION AND ORDER - 15**

III.   Petitioner's Foot Deformity

Petitioner's final challenge on appeal is that the ALJ improperly acted as a medical expert when he determined that Petitioner's foot condition did not prevent him from performing a range of light work. Pt.'s Br. at 8-10 (Dkt. 16). Petitioner asserts both a broad and a narrow version of this argument.

The Court does not find the broad version – that an ALJ may never determine the impact of a particular condition without the input of a medical expert – to be persuasive. It is well-settled that it is the ALJ's responsibility to "translat[e] and incorporate[e] [the] clinical findings into a succinct RFC." *Rounds v. Comm'r SSA*, 807 F.3d 996, 1006 (9th Cir. 2015); *see also Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity."). It is also well-settled that an ALJ may, in appropriate circumstances, reject an uncontroverted medical opinion and craft a RFC based on the remainder of the record. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (an ALJ is not bound by a physician's opinion, even if that opinion is uncontroverted). These cases foreclose Petitioner's claim that an ALJ must always consult with an expert before crafting the RFC. *Bufkin v. Saul*, 836 F. App'x 578, 579 (9th Cir. 2021) (unpublished) ("ALJs need not seek the opinion of a medical expert every time they review new medical evidence and make a RFC determination"); *see also Farlow v. Kijakazi*, 53 F.4th 485, 488 (9th Cir. 2022) ("ALJs are, at some level, capable of independently reviewing and forming conclusions about medical evidence to discharge their statutory duty to determine whether a claimant is disabled and cannot work").

Where, as here, an ALJ crafts a RFC without the benefit of an expert medical opinion the proper question is (i) whether the ALJ satisfied his duty to adequately develop the record and (ii)

**MEMORANDUM DECISION AND ORDER - 16**

if so, whether the conclusions the ALJ drew from the record are unreasonable, overly speculative, or otherwise unsupported by substantial evidence. *See Mayes v. Massanari*, 276 F.3d 453, 459-460 (9th Cir. 2001) (setting forth the standard for finding that an ALJ failed to develop the record) and *Woods*, 32 F.4th at 787 (explaining that substantive challenges to an ALJ's findings are reviewed under a substantial evidence standard).

In *Day v. Weinberger*, 522 F.2d 1154 (9th Cir. 1975), for example, the Ninth Circuit held that an ALJ's independent research mission, which involved consulting medical textbooks and drawing his own conclusions about the claimant's physical condition based on the claimant's appearance at the disability hearing, did not provide clear and convincing reasons for rejecting the opinions of a treating provider. *Id.* at 1157.

Here, in addition to making broad arguments about the ALJ's duty to consult with a medical expert, Petitioner appears to be raising a narrow challenge, under *Weinberger,* to the ALJ's assessment of the "raw medical data." Specifically, Petitioner expresses concern that the ALJ rejected his claim that he could only be on his feet for five hours a day based on a dense medical record that included an ankle MRI. Respondent, by contrast, maintains that the ALJ reasonably found that Petitioner could be on his feet six hours a day (as required for light work),[2] not based on technical medical evidence, but based on Petitioner's positive response to pain medication and bracing and his ability to work jobs standing for eight hours on his feet after the initial onset of his foot pain. D.'s Br. at 5-6 (Dkt. 18).

---

[2] "Light work" has a well-established meaning in disability law. Relevant here, a job is categorized as light work if it "requires a good deal of walking or standing." 20 C.F.R. § 416.967(b). A Social Security ruling further explains: "[T]he full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time." SSR 83-10, 1983 WL 31251, at *6 (Jan. 1, 1983).

**MEMORANDUM DECISION AND ORDER - 17**

Unfortunately, the ALJ's discussion of Petitioner's foot deformity is too summary for the Court to resolve this dispute. While the ALJ reviewed the evidence about Petitioner's foot pain, the ALJ's analysis of this evidence is minimal at best. AR 916-917. For example, the ALJ noted that:

> [I]n March 2022, the claimant reported working at Walmart as a cashier and that he was on his feet for eight hours a day standing on a padded surface. The claimant reported foot pain in the morning that improves slightly as he would start walking in the morning but that returned after being on his feet all day. The claimant reported naproxen was helpful. He was provided a work note after leaving work early two days in early March and was also provided a note to allow him to use a stool for work for four weeks.

AR 915. The ALJ, however, never explained what conclusions he drew from this evidence. And the Court will not speculate on what they might have been. *See Bray v. Comm'r of SSA*, 554 F.3d 1219, 1225 (9th Cir. 2009) (admonishing that courts must "review the ALJ's decision based on the reasoning and factual findings offered by the ALJ -- not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking"). Here, the only specific reason the ALJ provided for finding that Petitioner could stand and walk long enough to perform light work was that "[d]espite the assertion that the claimant can generally not be physically active, in June 2019, the claimant reported going bowling with his family and having a good time, without any indication his physical impairments impeded his participation." AR 917. This was not substantial evidence for the conclusion that Petitioner's foot pain, which did not emerge until the fall of 2021, allowed him to perform light work. The Court, accordingly, cannot affirm the ALJ's finding that Petitioner could perform light work.

### III. The Remedy

When an ALJ's denial of benefits is not supported by the record, district courts possess discretion under 42 U.S.C. § 405(g) to remand for further proceedings or for an award of

**MEMORANDUM DECISION AND ORDER - 18**

benefits. *Treichler v. Comm'r of SSA*, 775 F.3d 1090, 1099 (9th Cir. 2014). The proper course turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings and when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Id.* at 1100. In most cases, however, remand for additional investigation or explanation is preferred. *Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012). Such remands allow for the ALJ to resolve any outstanding issues in the first instance.

In this case, the ALJ provided valid reasons for finding Petitioner's autism non-disabling. The ALJ's refusal to award benefits prior to the onset of Petitioner's foot pain, consequently, must be affirmed. By contrast, the ALJ failed to explain his conclusion that Petitioner could be on his feet long enough each day to perform light work. The case must be remanded so that the ALJ (i) can provide that explanation, and (ii) in the event ALJ finds that Petitioner can only stand or walk less than six hours a day, determine whether there is work in the national economy that Petitioner can perform despite this limitation.

## ORDER

Based on the foregoing, Petitioner's Petition for Review and the Brief in Support of Petition to Review (Dkts. 1 & 16) are **GRANTED** in part and **DENIED** in part, and the decision of the Commissioner is **REVERSED** and **REMANDED** for further proceedings consistent with this decision.

DATED: August 11, 2025

Raymond E. Patricco
Chief U.S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 19**